# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 15 |
| MEGA BRANDS INC., et al.,[1] | ) Case No. 10-[10485] (___) |
| Debtors in a Foreign Proceeding. | ) (Joint Administration Requested) |

## DECLARATION OF SANDRA ABITAN IN SUPPORT OF
## PETITION FOR RECOGNITION AND CHAPTER 15 RELIEF

I, Sandra Abitan, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States of America as follows:

1. I submit this Declaration in support of the Petition.[2] All facts set forth in this Declaration are based on: (a) my personal knowledge; (b) my review of relevant documents; or (c) my opinion based upon my experience and knowledge of the Chapter 15 Debtors' operations. If I were called upon to testify, I could and would testify competently to the facts set forth herein.

2. I am an attorney with and member of the Canadian firm of Osler, Hoskin & Harcourt LLP, 1000 De La Gauchetière Street West, Suite 2100, Montréal, Québec, Canada, H3B 4W5. I am counsel to the Chapter 15 Debtors, whose Canadian Proceeding is pending before the Canadian Court.

---

[1] The Chapter 15 Debtors, along with the last four digits of each U.S. Debtor's federal tax identification number, are: Mega Brands Inc. (a non-U.S. Debtor that does not maintain a U.S. federal tax identification number); 4402596 Canada Inc. (a non-U.S. Debtor that does not maintain a U.S. federal tax identification number); 4402804 Canada Inc. (a non-U.S. Debtor that does not maintain a U.S. federal tax identification number); MB Finance LLC (7565); MB US Inc. (7561); MB2 LP (7567); Mega Bloks Financial Services, Inc. (a non-U.S. Debtor that does not maintain a U.S. federal tax identification number); Mega Brands America, Inc. (2083); Rose Moon, Inc. (1445); and Warren Industries, Inc. (4985). The location of the Debtors' corporate headquarters and the service address for all of the Debtors is: 4505 Hickmore, St-Laurent, Québec, H4T 1K4.

[2] Unless otherwise defined in this Declaration, all capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Petition, filed concurrently herewith.

3. I graduated from the Université de Montréal with a bachelor of laws in 1989, and was admitted to the Barreau de Québec in 1990. I specialize in corporate reorganizations, and have practiced extensively in insolvency and restructuring since 1990.

4. I have served as President of the Montréal Chapter of the Board of Directors of the Turnaround Management Association, and I am a member of the Insolvency Section of the Canadian Bar Association, the International Committee of the American Bankruptcy Institute, the International Association of Insolvency Practitioners, the International Women's Insolvency & Restructuring Confederation, and the Liaison Committee in the Commercial Division of the Québec Superior Court.

5. I have given numerous lectures and seminars on topics focusing on insolvency law and corporate reorganizations. I have also been retained by the Office of the Superintendent of Bankruptcy to participate in the drafting of the trustee license examinations.

6. My expertise in insolvency and restructuring law has most recently been recognized by *Best Lawyers in Canada* and *Lexpert Directory*.

7. This Declaration is comprised of matters that are statements of legal opinion and/or statements of fact. Where the matters stated in this declaration are statements of legal opinion, such statements represent my view of Canadian law as a lawyer admitted and licensed to practice in Québec, Canada.

8. Where the matters stated in this declaration are statements of fact that are within my personal knowledge, they are true. Where the matters stated in this Declaration are statements of fact that are not within my personal knowledge, they are derived from documents and/or information supplied to me by or on behalf of the Chapter 15 Debtors and are true to the best of my knowledge, information, and belief.

## I. Introduction

9. On February 12, 2010, Mega Brands, the ultimate parent company of the Chapter 15 Debtors, along with the Canadian Chapter 15 Debtors and 4541162 Canada Inc. and 4541171 Canada Inc., filed an application with the Québec Superior Court pursuant to sections 192(3) and 192(4) of the *Canada Business Corporations Act* (the "CBCA") for an order, *inter alia*, approving a proposed plan of arrangement of the Chapter 15 Debtors (the "Arrangement").[3]

## II. Overview of the CBCA Restructuring Process

10. The CBCA is the Canadian statute that governs federally incorporated businesses, not including banks, insurance, and trust and loan companies. Section 192 of the CBCA governs corporate reorganizations of the type sought in the Canadian Proceeding. The CBCA contemplates a flexible procedure referred to as an "arrangement" through which corporate reorganization and acquisition transactions may be implemented.[4] Unlike other transaction structures, an arrangement is a court-supervised process whereby an applicant corporation applies to the relevant provincial court for an interim order setting the ground rules for the arrangement transaction. An arrangement typically requires the approval of the corporation's board of directors and shareholders, and must be judicially determined to be "fair and

---

[3] The applicants in the Canadian Proceeding include Chapter 15 Debtors Mega Brands, 4402596 Canada Inc., 4402804 Canada Inc., and Mega Bloks Financial Services Inc. The following U.S. Chapter 15 Debtors are also impleaded parties in the Canadian Proceeding: MB2 LP, MB US Inc., Mega Brands America, MB Finance LLC, Rose Moon, Inc., and Warren Industries, Inc. In addition to the Chapter 15 Debtors, the Arrangement seeks to approve the proposed plan of arrangement for applicants 4541162 Canada Inc. and 4541171 Canada Inc., and impleaded parties Mega Brands International and Mega Bloks Latinoamerica SA de CV.

[4] Section 192(1) of the CBCA defines "arrangement" in a non-exhaustive fashion to include: (a) an amendment to the articles of a corporation; (b) an amalgamation of two or more corporations; (c) an amalgamation of a body corporate with a corporation that results in an amalgamated corporation subject to the CBCA; (d) a division of the business carried on by a corporation; (e) a transfer of all or substantially all of the property of a corporation to another body corporate in exchange for the property, money, or securities of the other body corporate; (f) an exchange of securities of a corporation for property, money, or other securities of the corporation or property, money, or securities of another body corporate; (g) a going-private transaction or a squeeze-out transaction in relation to the corporation; (h) a liquidation and dissolution of a corporation; and (i) any combination of the foregoing.

3

reasonable" to be approved by a court. Canadian courts have interpreted the definition of "arrangement" broadly to encompass novel, complex, and unique transactions, including the compromise of debt and securities.

11. A CBCA arrangement can affect the interests of non-CBCA entities. While all of the applicants to the Canadian Proceeding are CBCA corporations, the arrangement will also affect the interests of the U.S. Chapter 15 Debtors. Canadian Courts have arranged non-CBCA entities along with CBCA entities in the context of mergers. For example, in *Arrangement relatif à Molson*, [2004] Q.J. No. 13366, Lalonde J. of the Québec Superior Court sanctioned an arrangement between Molson (a CBCA corporation) and Coors (a Delaware Corporation) that had the effect of a cross-border merger. In addition, Canadian courts have arranged non-CBCA entities along with CBCA entities in the context of a debt compromise. The CBCA arrangement of AT&T, for example, involved an amalgamation of entities that were incorporated under the CBCA and equivalent statutes in Ontario, Nova Scotia, and New Brunswick. Finally, in *Re Acadian Timber Income Fund*, Pepall J. of the Ontario Superior Court of Justice recently confirmed that section 192 could be used to effect an arrangement in which the applicants include a limited partnership, an income trust, and three CBCA corporations. *Re Acadian Timber Income Fund*, [2009] O.J. No. 517 (S.C.J), Pepall, J.

12. Upon application to the court for an order approving the arrangement, an initial appearance is made before the court for an interim order which will specify such items as the manner in which a special meeting of the shareholders will be called (e.g., proxy materials to be distributed, notice periods, time and place of meeting, etc.), the persons entitled to vote at the meeting, whether any class of persons will be entitled to a separate class vote and the approval thresholds required to approve the arrangement. Once the meeting is held and the arrangement

4

resolution passed by the required majority, the applicant corporation requests a final order approving the arrangement. If the court is satisfied as to the "fairness" of the arrangement, it will grant a final order approving the arrangement. The arrangement is then effected by filing articles of arrangement under the CBCA.

13. Canadian courts generally use a three-pronged test when hearing an application for the final approval of a plan of arrangement:

   (a)  whether the statutory procedures have been met;

   (b)  whether the application has been put forward in good faith; and

   (c)  whether the plan of arrangement is fair and reasonable.

14. Parties impaired by the proposed plan of arrangement have standing to challenge such plan, and all parties can appear before the CBCA judge and argue that they are impaired by the arrangement—thereby having standing to object.

15. An arrangement is often a preferred transaction structure due to its substantial flexibility. In particular, arrangements are not circumscribed by the takeover bid rules or the structural parameters set by other forms of corporate transactions (e.g., amalgamations and capital reorganizations) and, importantly, arrangements facilitate structuring, financing and tax planning objectives by enabling an acquirer (and a target) to set out the precise series of steps that must occur prior to, at, and following the effective time of, an arrangement.

16. The CBCA provides three main regulatory limits on transactions that can proceed as an arrangement:

   (a)  it must not be practicable for the corporation to effect the proposed transaction under any other provision of the CBCA;

   (b)  the applicant corporation must not be insolvent; and

(c) the arrangement provisions of the CBCA may only be used in circumstances where the corporation proposes to effect a "fundamental change" in the nature of an arrangement.

17. Québec doctrine and case law indicate that plans of arrangement may proceed where an applicant, insolvent at the time of the interim order, is solvent at the date of the final order. Moreover, a number of decisions have confirmed that the solvency requirement is met where at least one of the corporate applicants is solvent. In this case, the solvency test is met because more than one of the applicants is solvent at the time of the Interim Order and all of the applicants will be solvent upon implementation of the Arrangement in accordance with the Arrangement Order.

18. It is further submitted that the provisions of the Canadian Interim Order attached as Exhibit 1 are appropriate and advisable, and provide for procedural fairness with respect to the manner in which subsequent events will proceed. The provisions ensure:

(a) that the Shareholders and Lenders are properly notified of the Arrangement and have an opportunity to consider the Arrangement and its effect;

(b) that the Shareholders and Lenders have the opportunity to express their views on the Arrangement in the context of meetings;

(c) that there is sufficient and appropriate approval of the Arrangement by the Shareholders and Lenders;

(d) that the Shareholders and Lenders receive notice and have the opportunity to attend and make submissions at the hearing for the Final Order to consider whether the proposed Arrangement is fair and reasonable and whether it should be approved.

K&E 16227239.19

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this February 18, 2010
Montréal, Québec, Canada

*(signature)*

**OSLER, HOSKIN & HARCOURT LLP**
Sandra Abitan
1000 De La Gauchetière Street West
Suite 2100
Montréal, Québec, Canada  H3B 4W5
Telephone: (514) 904-5648
Facsimile: (514) 904-8101

Counsel for the CBCA Applicants and the Impleaded Parties